UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| EDWIN D. CALLIGAN, | ) |
|---|---|
| Petitioner, | ) |
| | ) No. 3:11 CV 13 |
| v. | ) |
| SUPERINTENDENT, | ) |
| Respondent. | ) |

## OPINION and ORDER

Edwin D. Calligan, a *pro se* prisoner, filed a habeas corpus petition challenging a prison disciplinary proceeding. (DE # 1.) In ISP 10-07-0298, a hearing officer at Indiana State Prison ("ISP") found Calligan guilty of violating disciplinary rule B209, which prohibits inmates from impairing surveillance by covering their cells with curtains or other objects. (DE # 5-13; DE # 5-15 at 2.) Calligan was originally charged with possessing an electronic device in violation of rule B207; the original and modified charge both arose from an incident that occurred while guards were attempting to search Calligan's cell. (DE # 5-3.) On July 10, 2010, Correctional Officer R. Calhoun prepared a conduct report stating as follows:

> On 17 July at approx. 10:30 pm I (Ofc Calhoun) gave offender Calligan (DOC # 994335) a direct order to back up to his food slot to be restrained for a cell search. Offender Calligan pulled a blanket to try to block view into his cell. Through an opening on the side I (Ofc Calhoun) saw offender Calligan unplug a cellular phone charger and turn toward the toilet. I then heard the toilet flush.

(DE # 5-3.)

On July 21, 2010, Calligan was notified that he was charged with possessing an electronic device. (DE # 5-3; DE # 5-4.) The screening report reflects that he pled not guilty, requested a lay advocate, and requested witness statements from other officers involved in the search and an offender who allegedly witnessed these events. (DE # 5-4.) He also requested that the blanket be produced, as well as a "confiscation slip" for the blanket. (*Id.*)

Thereafter, a witness statement was obtained from Sergeant C. Clouse, who attested that when she and Officer Calhoun arrived at Calligan's cell she saw him "grab a baggie out of his cabinet [sic] a small black item and dropped it in the toilet. Flushed it."[1] (DE #5-6 at 2.) Another officer involved in the search, Officer J. Bibb, provided the following statement:

> I J. Bibb witnessed on July 17, 2010 approx 10:30 p.m. myself, Ofc. Calhoon [sic], and Sgt. Clouse went to offender Calligan's cell for a shake down upon arriving to the cell Ofc. Calhoon gave the offender a direct order to cuff up the offender got off bed sat on toilet and made reference to the hot dogs he ate. The offender stood up pulled a curtain and began to flush what Ofc. Calhoon said he saw to be a charger to a cell phone. I myself left to shut his water off, and when I came back the offender was ready to cuff up.

(DE # 5-6 at 4.) A witness statement was also obtained from an inmate, Maurice Moody, who stated as follows:

> I observed the incident in question, and I heard Ofc. Calhoun say "I can't see anything." At that time the female Sgt. said "me neither." Ofc. Calhoun then

---

[1] It appears from the record that the officers went to Calligan's cell to look for a phone because a recent photo of him in his cell had appeared on his Facebook page. (*See* DE # 5-6 at 2; DE # 5-9; DE # 5-14 at 4.)

2

> told the 3rd C/O to "go get the mop stick so I can snatch down his curtain." When the 3rd C/O returned, the female Sgt. stated, "He flushed whatever he had." Ofc. Calhoun said, "I know!" Returning from the shower I also heard Ofc. Calhoun tell 506 that, ["]All I have to say is I saw you flush a charger. It's my word against your[s], who do you think DHB is going to believe?"

(DE # 5-6 at 1.) In preparation for the hearing, the hearing officer also viewed surveillance video from the incident, which she summarized as follows: "I did view the officers approach the cell. The offender had a curtain blocking view into the cell. I could see a small opening on the side of the curtain. I could also see the staff looking in the sides of the cell." (DE # 5-7.)

The hearing was originally scheduled for July 27, 2010, but was rescheduled due to an institutional lockdown, then at Calligan's request, and a third time so that witness statements could be obtained. (DE # 5-5 at 1-3.) A hearing was finally held on August 20, 2010. (DE # 5-13.) The hearing officer found the evidence inconclusive as to whether Calligan had been in possession of a cell phone, but nevertheless found him guilty of violating rule B209, "Impairment of Surveillance," by obscuring the officers' view into his cell. (*Id.*) She imposed various sanctions, including the loss of 15 days earned time credits. (*Id.*) Calligan appealed, and the facility head affirmed the hearing officer's determination but suspended the earned time credit sanction, providing that Calligan committed no additional A or B class disciplinary offenses within six months. (*Id.*; DE # 5-14 at 1.) Calligan's appeal to the final reviewing authority was denied. (DE # 5-14 at 9.) The suspended sanction was later imposed when Calligan was found

3

guilty of threatening staff in violation of rule B213. (DE # 5-14 at 12.) This petition followed.

As an initial matter, Calligan objects to the court having given the respondent a three-day extension to file the return. (DE # 7.) Because this document was received after the extension was already granted, the court will treat it as a motion to reconsider. Upon review, it was an appropriate exercise of the court's discretion to grant this short extension, and there is nothing in Calligan's motion to warrant a different ruling. The court would have afforded Calligan the same courtesy had his traverse been three days late. Accordingly, the motion will be denied.

When prisoners lose earned time credits in a prison disciplinary hearing, they are entitled to certain protections under the Due Process Clause: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by a fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). To satisfy due process, there must also be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Here, Calligan raises three claims in his petition. He first claims that there was insufficient evidence to support his conviction for "Impairment of Surveillance" because this was not the offense with which he was originally charged. (DE # 1 at 3;

DE # 8-1 at 2-3.) In support, he relies on an Indiana Department of Correction ("IDOC") executive directive, arguing that under the directive "Impairment of Surveillance" is not a lesser included offense of "Possession of an Electronic Device." (DE 8-1 at 2-3.) Be that as it may, relief in a federal habeas corpus proceeding is only available for a violation of the United States Constitution or other federal law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, Calligan's claim premised on an alleged violation of internal prison policy does not provide a basis for granting federal habeas relief.

To the extent Calligan is also arguing that there was insufficient evidence to find him guilty of impairing surveillance, this claim fails as well.[2] The "some evidence" test is not a demanding one. *Hill*, 472 U.S. at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. A disciplinary determination will be overturned on the basis of insufficient evidence only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis

---

[2] The IDOC Adult Disciplinary Procedures define "Impairment of Surveillance" as follows: "Using curtains, coverings or any other matter or object in an unauthorized manner that obstructs or otherwise impairs the line of vision into an offender's cell or room or which obstructs or otherwise impairs any viewing panel or surveillance equipment, either audio or visual within the facility, including blocking staff's view down a range." (DE # 5-15 at 2.)

of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994).

In this case, there is ample evidence in the record to support the conclusion reached by the hearing officer. The conduct report alone constitutes some evidence that Calligan put up a blanket or some other type of cloth obscuring the officers' view into his cell. *McPherson McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (conduct report alone provided "some evidence" to support disciplinary determination). Moreover, the statement of Officer Bibb and Calligan's own witness, inmate Moody, confirmed that he had obstructed the view into his cell, as did the surveillance video. (*See* DE # 5-6 at 1, 4; DE # 5-7.) This evidence more than satisfies the "some evidence" standard, and accordingly, this claim is denied.

Calligan next claims that he was denied the required 24 hours notice because he was found guilty of a different offense than was listed in the conduct report. (DE # 1 at 3.) In *Northern v. Hanks*, 326 F.3d 909 (7th Cir. 2003) (per curiam), the U.S. Court of Appeals for the Seventh Circuit rejected a similar argument made by an Indiana inmate. Northern was charged with conspiracy and bribery in connection with an investigation revealing that he and two other inmates were smuggling tobacco into the facility. *Id.* at 909-10. Prior to the hearing, he was given a copy of the investigation report detailing the factual basis for the charges. *Id.* at 910. He was found guilty by a disciplinary board, but on appeal the reviewing authority determined that the facts

more appropriately supported a finding that Northern had committed "attempted trafficking." *Id.* He modified the charge accordingly. *Id.*

Northern filed a federal habeas petition claiming that the reviewing authority's action violated his due process rights because it denied him adequate notice of the charge and prevented him from mounting an appropriate defense. *Id.* The Seventh Circuit rejected this argument, relying on the fact that Northern had been given a copy of the investigation report, which "inform[ed] him of the facts underlying the charge." *Id.* The Circuit concluded, "Because the factual basis of the investigation report gave Northern all the information he needed to defend against the trafficking charge, the reviewing authority's modification did not deprive Northern of his due process rights." *Id.* at 911. In other words, when an inmate is sufficiently notified of the factual basis for a charge, he is also on notice that he could face another charge based on the same set of facts. *Id.*; *see also Boyd v. Anderson*, 265 F. Supp.2d 952, 962-63 (N.D. Ind. 2003) (no due process violation where superintendent altered charge from possession of escape paraphernalia to unauthorized possession, removal, or relocation of property, where charges had the same factual basis).

Here, Calligan was given a copy of the conduct report which detailed the factual basis for the charge: the July 17, 2010, incident in which the officers were attempting to search his cell to determine whether he was in possession of a phone but could not see in because he had put up a curtain obscuring their view. The conduct report gave Calligan all the information he needed to defend against a charge that he had impaired

7

the officers' surveillance, and Calligan had the same interest in defending against the original and modified charges, as both were B-level offenses. Calligan suggests that he would have mounted a different defense to the impairing surveillance charge, but he does not indicate what witnesses or evidence he would have sought to present. (*See* DE # 8-1 at 3-4.) Indeed, it is difficult to imagine what defense Calligan would have mounted, given that his own witness and the surveillance video confirmed that he had obscured the officers' view into his cell. For these reasons, Calligan is not entitled to habeas relief on this claim.

Calligan next claims that he was denied an opportunity to present evidence in his defense. (DE # 1 at 4; DE # 8-1 at 4-5.) A prisoner has a limited right to call witnesses and present documentary evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566; *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002). Here, Calligan complains that the hearing officer did not produce the blanket and a "confiscation slip" for the blanket that he requested at the time of screening. (DE # 1 at 4.)

As for the confiscation slip, there is no indication that the blanket was actually confiscated. Indeed, the crux of Calligan's claim is that if he was in fact guilty of committing this offense, the "alleged 'blanket' *should have been* confiscated." (DE # 1 at 4) (emphasis added). The hearing officer could not have produced or considered evidence that did not exist. As for the blanket, a hearing officer may not arbitrarily refuse to consider exculpatory evidence, but it is not at all clear—nor has Calligan

explained—how the blanket would have been "exculpatory." *See Piggie*, 277 F.3d at 925 (describing prisoner's limited right to access exculpatory evidence); *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (holding that prisoner's conditional right to access evidence only extended to evidence that was exculpatory in nature). Whether the blanket existed was not the issue, it was whether Calligan used the blanket to obscure the officers' view into his cell. The witness statements and surveillance video amply demonstrated that Calligan did obscure the officers' view, and production of the blanket itself would have added nothing to the hearing officer's analysis. Therefore, this claim is denied.

For these reasons, the court:

(1) **DENIES** the motion in opposition (DE # 7); and

(2) **DENIES** the petition (DE # 1).

**SO ORDERED**.

Date: May 2, 2011

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT